**Marvin J. WILLIAMS, Plaintiff,**

v.

**BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, Defendant.**

No. Civ.A. 97–2473–KHV.

United States District Court, D. Kansas.

May 19, 1998.

Donald J. Richmond, Thomas J. Joyce, III, Forceno, Hannon & Arangio, Philadelphia, PA, Robert D. Loughbom, Lenexa, KS, for Plaintiff.

William P. Coates, Jr., Holman, Hansen & Colville, P.C., Prairie Village, KS, for Defendant.

### *MEMORANDUM AND ORDER*

VRATIL, District Judge.

This matter comes before the Court on defendant's *Motion For Summary. Judgment* (Doc. # 42) and defendant's *Motion In Limine to Exclude Or Otherwise Limit Testimony Of Jetzer* (Doc. # 41), both filed on March 30, 1998.

### Procedural Background

█ The Court addressed both motions at a status conference on April 30, 1998. Defendant seeks to exclude the testimony of plaintiff's expert, Dr. Thomas Jetzer, on the ground that the testimony which he proposes to give at trial is in material conflict with the opinions stated in his expert reports.[1] Plaintiff responds that exclusion of Dr. Jetzer's testimony will essentially terminate plaintiff's case.

At the time of the status conference on April 30, 1998, trial was set for May 5, 1998. At the conference, the Court believed—and communicated to counsel its belief—that recent Tenth Circuit authority required it to postpone the trial and grant plaintiff additional time to conform Dr. Jetzer's written reports to his deposition testimony. In making this judgment the Court had in mind the case of *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599 (10th Cir.1997), although it did not have the opinion in front of it at the time. The Court proposed that the trial be postponed, that plaintiff be allowed to revise his expert reports (on certain conditions), and

---

**1.** The expert reports take the form of letters which Dr. Jetzer addressed to plaintiffs attorney. The first letter is dated December 8, 1995— nearly two years before plaintiff filed suit. We do not decide whether that document is properly considered an expert report under Rule 26(a)(2)(B), since the parties have apparently agreed to construe it as such.

The expert reports question whether plaintiff suffers the injury he alleges, and if so, whether the injury is job related. At his deposition, however, Dr. Jetzer revised his opinion with respect to both injury and causation. He also opined that plaintiff suffers "hand/arm vibration syndrome," a condition which is not mentioned in the pretrial order or the expert reports. Defendant argues that information which is not contained in the written reports should be excluded under Fed.R.Civ.P. 37(c)(1), and that any claims not contained in the pretrial order should be disallowed.

that ruling on defendant's motion for summary judgment be deferred until that time. At the parties' request, however, the Court agreed to resolve defendant's motion for summary judgment before addressing defendant's motion to exclude Dr. Jetzer's testimony. Accordingly, the Court parked plaintiff's case on the trial docket beginning May 19, 1998, pending a ruling on defendant's motion for summary judgment.

Since the status conference, the Court has re-examined the holding in *Summers*. Having done so, it concludes that Tenth Circuit authority does not require the continuance and opportunity to cure which plaintiff seeks. The requested extension, coming two business days before trial, was ordained to disrupt the orderly and efficient trial of the case. Defendant had filed and briefed its summary judgment motion in reliance upon the written reports of plaintiff's expert—as it was entitled to do. A new expert report, if allowed, will dramatically differ from the reports which plaintiff timely served. To allow plaintiff to vacate those reports and start afresh with new testimony and opinions would cause undue prejudice to defendant, and defendant has no ability to cure any such prejudice. Moreover, plaintiff has not demonstrated good cause for its failure to comply with the pretrial order and Fed.R.Civ.P. 26(a)(2)(B) and 37(c)(1). For these reasons, the Court finds that plaintiff has not demonstrated good cause why he should be allowed to substitute a new expert report, two business days before trial, for the report which he served in accordance with the scheduling order in this case.

In other words, we reach the inescapable conclusion that to grant plaintiff's oral request would severely disrupt the orderly and efficient trial of this case and inflict undeserved and irremediable prejudice on defendant. Although the decision to exclude evidence is a drastic sanction, *e.g.*, *Summers*, 132 F.3d at 604, plaintiff must abide by the same rules as other litigants, and the Federal Rules of Civil Procedure clearly require that plaintiff's expert reports contain a "complete statement of all opinions to be expressed and the basis and reasons therefor." Fed.

R.Civ.P. 26(a)(2)(B). *See also* Fed.R.Civ.P. 37(c)(1) (party that without substantial justification fails to disclose information in compliance with Rule 26(a) shall not be permitted to use at trial any witness or information not so disclosed). Plaintiff therefore shall not be entitled to delay the trial to supplement Dr. Jetzer's written expert reports. Pursuant to Fed.R.Civ.P. 26(a)(2)(B) and 37(c)(1), any opinions not expressed in Dr. Jetzer's written reports must be excluded from this case. We proceed to consider defendant's motion for summary judgment on the basis of the expert reports, as originally formulated.

### Factual Summary

Plaintiff admits all but three of defendant's statement of undisputed facts. As to the three, plaintiff has failed to comply with the local rules which govern the summary judgment process. D.Kan.Rule 56.1 provides in relevant part as follows:

A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, *shall refer with particularity to those portions of the record upon which the opposing party relies,* and, if applicable, shall state the number of movant's fact that is disputed. All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party. (Emphasis added)

Plaintiff has not referred with particularity to those portions of the record upon which he relies,[2] and he therefore has not specifically controverted defendant's statement of facts under D.Kan.Rule 56.1. *See, e.g., Thompson v. City of Lawrence,* Nos. Civ.A. 93–2253–KHV, 93–2310–KHV, 1994 WL 262598, at *2 (D.Kan. May 19, 1994) (plaintiffs who purported to dispute moving party's statements of undisputed facts, but failed to cite record support, failed to establish genuine issue of material fact under local rule), *aff'd,* 58 F.3d

---

**2.** Plaintiff's reference to the record takes the form of, e.g., "See Plaintiff's Complaint, Answers to Interrogatories and Plaintiff's Factual Contentions." He fails to indicate what particular portions of the record—i.e., lines, paragraphs, or page numbers—establish disputed issues of fact.

1511 (10th Cir.1995). Because plaintiff has failed to comply with D.Kan.Rule 56.1 and thereby demonstrate genuine issues of material fact, the Court deems admitted for purposes of this motion all of defendant's statement of undisputed facts.

On this record, the undisputed material facts are these:

Plaintiff began working for defendant in 1969. In 1980, plaintiff was laid off and he did not return to work for defendant until 1990. Since that time, however, he has worked continuously for defendant.

Since 1995, plaintiff has worked as a carman, repairing damaged or defective railroad freight cars. As a carman, he uses a number of tools, including impact wrenches, grinders, sledgehammers, drills, cutting torches and huck guns. In the last five years, plaintiff has received safety manuals on how to use this equipment, but even without such manuals, plaintiff believes that he knows all of the safety measures.

Plaintiff's job changes on a regular basis. Generally, he works on one specific task each day. Plaintiff has the opportunity to take regular breaks and lunch times, and he can use his discretion as to the duration and frequency of washroom or water breaks. Except for a grinder, which he uses for ten minutes at a time, plaintiff spends no more than ten minutes at a time on any particular task.

Plaintiff first felt pain in his hands in 1995, when he worked as a carman. Plaintiff did not complain, however, to his supervisor or the personnel office. Plaintiff claims that he experiences pain with some of the jobs which he performs at work, and also with repetitious movement or heavy grasping outside of work.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* 477 U.S. at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson* 477 U.S. at 251–52, 106 S.Ct. 2505. Ever mindful of these summary judgment standards, the Court now turns to the merits of defendant's motion.

## Analysis

Upon careful review of the record, we conclude that plaintiff has failed to demonstrate that genuine issues of material fact preclude the entry of summary judgment for defendant.

■ Plaintiff brings suit under the Federal Employer's Liability Act [FELA], 45 U.S.C. § 51 *et seq.* Under FELA an employer is liable for injuries to an employee resulting from employer negligence. To recover under FELA, plaintiff must prove that defendant was negligent and that defendant's negligence was a cause of plaintiff's injury. *Claar v. Burlington N.R. Co.,* 29 F.3d 499, 503 (9th Cir.1994); *Jordan v. Southern Ry. Co.,* 970 F.2d 1350, 1352 (4th Cir.1992). Plaintiff must submit evidence of "the traditional common-law elements of negligence, including foreseeability, duty, breach and causation." *Fulk v. Illinois Cent., R.R. Co.,* 22 F.3d 120, 124 (7th Cir.), *cert. denied* 513 U.S. 870, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994). Absent evidentiary proof, mere allegations are insufficient to defeat defendant's motion for summary judgment under FELA. *Deutsch v. Burlington N.R. Co.,* 983 F.2d 741, 743 (7th Cir.), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845 (1993).

### A. Defendant's Duty Of Care

■ In the context of this FELA action, defendant has the duty to provide plaintiff a reasonably safe place to work. *E.g., Shenker v. Baltimore & Ohio R.R. Co.,* 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963); *Chicago Great W. Ry. Co. v. Casura,* 234 F.2d 441, 447 (8th Cir.1956). To survive a motion for summary judgment, plaintiff must therefore present record evidence which creates a genuine issue of material fact whether defendant provided a reasonably safe workplace. Upon close inspection of the record, we conclude that plaintiff has failed to do so.

Plaintiff argues that defendant failed to initiate a program to educate employees about the risk factors of carpal tunnel syndrome or to take steps to develop an ergonomic program to protect its employees from developing carpal tunnel syndrome. Specifically, plaintiff contends that defendant knew about the existence of occupational carpal tunnel syndrome; that defendant conducted no safety meetings specifically to address carpal tunnel syndrome; that defendant provided employees with no safety memoranda or other written materials on the condition; and that it provided no training to employees about the syndrome or ways to avoid it.

■ In support of these arguments, plaintiff cites deposition testimony of Lawrence Fleisher, defendant's Director of Ergonomics and Safety. Plaintiff has failed to provide copies of the relevant excerpts, however, and we cannot find them in the record. In order to defeat a motion for summary judgment, plaintiff cannot rely upon arguments of counsel or allegations that are unsupported by the evidence in the record. *Thomas v. Wichita Coca-Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992); *Gross v. Burggraf Constr. Co.,* 53 F.3d 1531, 1546 (10th Cir.1995).

Even if the record contained such deposition testimony, plaintiff has failed to thereby demonstrate a genuine issue of material fact whether defendant breached its duty to provide a reasonably safe workplace. Plaintiff cites no record evidence that defendant knew or should have known that any specific tools which he used were unsafe or that any work tasks which he performed were unsafe. Plaintiff never complained to his supervisors, even when he was experiencing pain. Also, plaintiff received safety manuals on how to use his work tools, and he believes that he knows all of the safety measures even without the use of such manuals. Indeed, when asked what he felt defendant did wrong to cause the problems with his hands and wrists, plaintiff at his deposition answered, "[n]othing really." Plaintiff's Deposition at 116 (lines 11–24).

The mere allegation that defendant "knew about the existence of occupational carpal tunnel syndrome," even if true, provides no information with respect to the safety of plaintiff's particular workplace. Equally insufficient is plaintiff's conclusory allegation that "[c]learly, in light of the failure of Defendant to properly educate and/or warn its employees of the dangers and risks of occupational carpal tunnel syndrome, the Defendant has failed to provide the Plaintiff with a

safe place to work." Plaintiff cites no record evidence to demonstrate that the tasks plaintiff performed, or the frequency and duration of his tool use, created a workplace that was not reasonably safe, or if so, that defendant knew or should have known it was unsafe.

Plaintiff cites but does not analyze a lengthy passage from *Aparicio v. Norfolk & W. Ry. Co.*, 84 F.3d 803 (6th Cir.1996), apparently for the proposition that defendant's knowledge of general studies regarding carpal tunnel syndrome is sufficient to establish that defendant knew or should have known of risk factors and taken steps to ameliorate them, even if none of the studies connect carpal tunnel syndrome to plaintiff's specific work tasks. In *Aparicio,* plaintiff claimed that his employer acted negligently when it required him to work in a way that exposed his upper extremities to repetitive trauma, failed to evaluate trauma to his upper body, failed to advise him of the risk of carpal tunnel syndrome, and failed to redesign his job functions to make them ergonomically sound. The trial court sustained defendant's motion for judgment as a matter of law at the close of plaintiff's case, and the Sixth Circuit reversed.

The Sixth Circuit in *Aparicio* noted that plaintiff had presented expert testimony of ergonomic risk factors and known remedial measures that had been described and accepted by the scientific community. In addition, plaintiff had presented evidence of defendant's ergonomics program, which sought to identify and reduce risk factors through engineering changes or job rotations and breaks. Also, even though plaintiff informed defendant that he had carpal tunnel syndrome because of his work, and he received surgery on account of it, defendant returned plaintiff to the same duties without any modifications.

Reviewing such evidence, the Sixth Circuit held that a reasonable jury could have concluded that a reasonably prudent employer would have known about risk factors for carpal tunnel syndrome—i.e., sustained exertion, wrist flexion, and power tool vibration—and sought to ameliorate them; that defen-

dant should have known that plaintiff's job duties placed him at risk for carpal tunnel syndrome; and that defendant had breached its duty by failing to take remedial measures to reduce plaintiffs exposure to repetitive vibration and shocks. The Sixth Circuit also noted that the employer need not have notice of a previous injury before it acquires the duty to address a safety hazard or risk.

This case presents an entirely different situation. Dr. Jetzer's 1995 report states that plaintiff's injury is related to 26 years of repetitive, forceful, awkward use of hands including use of vibrating tools, a sledge hammer, and welding equipment.[3] Dr. Jetzer does not discuss ergonomic risk factors, however, or known remedial measures. He merely attaches to his report a boilerplate document that describes carpal tunnel syndrome, including treatment methods, testing, and so forth. The document does not describe any risk factors or known remedial measures about which defendant should have known. Moreover, Dr. Jetzer's 1997 report indicates that each of plaintiff's jobs must be evaluated to see whether ergonomic hazards truly exist, and in order to render a definitive opinion, Dr. Jetzer would like to see an ergonomic assessment. From the record, however, it is unclear that any such evaluation or assessment has occurred. In addition, plaintiff cites no record evidence that defendant has used an ergonomics program to identify and reduce risk factors through engineering changes or job rotations and breaks, nor does he cite record evidence to establish defendant's knowledge of general studies regarding carpal tunnel syndrome.

Because the facts before us vary so dramatically from those in *Aparicio,* we cannot reach the conclusion which the Sixth Circuit reached in that case. Even viewing the evidence in the light most favorable to plaintiff, no reasonable jury could find that defendant should have known that plaintiff's job duties placed him at risk for carpal tunnel syndrome or that defendant breached its duty by failing to take remedial measures to re-

---

3. In 1995, plaintiff had worked for defendant for only 16 years. The record does not disclose what remaining ten-year period Dr. Jetzer had in

mind, what plaintiff did during that period, or how his activities during that period bear on defendant's responsibility in this case.

duce his exposure to repetitive vibration and shocks.

In light of plaintiff's failure to present even the slightest evidence of negligence, *e.g., Harbin v. Burlington N.R.R. Co.*, 921 F.2d 129, 131 (7th Cir.1990) (quantum of evidence required to establish liability under FELA is much less than in an ordinary negligence action), plaintiff has not established a genuine issue of fact whether defendant breached its duty of care to provide a reasonably safe workplace. Accordingly, defendant is entitled to judgment as a matter of law on plaintiffs' claim that defendant breached its duty of care.

**B. Causation**

■ As noted above, to recover under FELA plaintiff must also prove causation. Even if we were to find that defendant knew or should have known that plaintiff's workplace was dangerous and that it breached its duty to provide him a safe workplace, we conclude for reasons stated below that plaintiff has failed to establish genuine issues of material fact whether defendant's acts caused his alleged injury.

Plaintiff argues that his expert will testify, as to "specific causation," that "there were occupational causes of carpal tunnel syndrome." Dr. Jetzer's expert reports, however, do not demonstrate any genuine issue of material fact whether defendant caused plaintiff's alleged injury. The 1995 report states that plaintiff has possible bilateral carpal tunnel syndrome that is "related" to his work history, i.e., his "26 year history of repetitive, forceful, awkward use of the hands including the use of vibrating tools, a sledge hammer, and welding equipment." The 1997 report states as follows:

> The problematic issue that concerns me is the assumption that this is work related. This individual has bilateral abnormalities and there is no mention whether there is [sic] any other confounding factors such as ... previous wrist trauma that may have occurred to Mr. Williams.

The report goes on to state that while some types of repetitive and forceful work of the hands can be associated with carpal tunnel syndrome,

each job should be evaluated to see if any ergonomic hazards truly exist. Before giving a definitive opinion, I would like to see an ergonomic assessment and possibly videotape the type of work that Mr. Williams performs.

Neither report reveals that Dr. Jetzer has knowledge of any formal ergonomic assessment of plaintiff's work tasks or, for that matter, of any ergonomic assessments of a carman's workplace.

In light of the fact that plaintiff's own expert witness questions whether plaintiff's injury is work related and admits that he lacks the data necessary to form an opinion, no reasonable jury could conclude that plaintiffs' work activities caused his alleged injury. Accordingly, defendant is entitled to judgment as a matter of law on this element of plaintiff's claim under FELA.

**IT IS THEREFORE ORDERED** that defendant's *Motion In Limine to Exclude Or Otherwise Limit Testimony Of Jetzer* (Doc. # 41) filed March 30, 1998, be and hereby is **SUSTAINED.**

**IT IS HEREBY FURTHER ORDERED** that defendant's *Motion For Summary Judgment* (Doc. # 42) filed March 30, 1998, be and hereby is **SUSTAINED.**