PUBLISH

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 28 2002**

**PATRICK FISHER**
**Clerk**

# UNITED STATES COURT OF APPEALS
## TENH CIRCUIT

SUSAN M. DAVEY,

      Plaintiff - Appellee,

v.

LOCKHEED MARTIN
CORPORATION, a Maryland
corporation,

      Defendant - Appellant.

No. 00-1373

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 96-D-2076)**

---

Katherine J. Peck (Richard G. Wilkins and Matt A. Mayer, with her on the brief), Holme Roberts & Owen LLP, Denver, Colorado, for the appellant.

Barry D. Roseman, Roseman & Kazmierski, LLC, Denver, Colorado, for the appellee.

---

Before **TACHA**, Chief Judge, **GARTH**[1] and **BRISCOE**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

[1] The Honorable Leonard I. Garth, United States Court of Appeals, Third Circuit, sitting by designation.

Susan Davey brought this employment discrimination action against her former employer, Lockheed Martin Corporation (LMC), alleging LMC discriminated against her on the basis of gender in 1992 and retaliated against her in 1993 for complaining about the discrimination when LMC selected her for layoff during a reduction in force. Davey amended her complaint to include another retaliation claim based on LMC's refusal to rehire her in 1997. A jury trial resulted in a verdict in favor of LMC on the 1992 discrimination and the 1993 retaliation claims, but in favor of Davey on the 1997 retaliation claim. In accordance with the jury's verdict, the district court awarded Davey compensatory damages of $50,000 and punitive damages of $200,000, and further entered judgment in favor of Davey for back pay of $112,800, front pay of $36,000, and attorney fees of $65,610, plus pre-judgment and post-judgment interest.

LMC appeals the verdict in favor of Davey on the 1997 retaliation claim,[2] contending (1) the district court erroneously denied it the opportunity to present a material aspect of its case to the jury, which led to an unfair award of punitive damages; (2) the court failed to instruct the jury that "an invidious motive must be 'a motivating factor' in an actionable employment decision" (Br. at 23); and (3) the court improperly applied Batson v. Kentucky, 476 U.S. 79 (1986), during jury selection. LMC also appeals the award of attorney fees because the district court stated it awarded the fees based in part on

---

[2] Davey does not appeal the verdict in favor of LMC on the 1992 discrimination and the 1993 retaliation claims.

2

the "excellent results" plaintiff received in being awarded $200,000 in punitive damages. We exercise jurisdiction under 28 U.S.C. § 1291, vacate the award of punitive damages arising out of the 1997 retaliation claim, vacate the award of attorney fees, and remand for new trial limited to the issue of punitive damages. We affirm the judgment in all other regards.

## I.

Davey was hired by Martin Marietta Corporation, now LMC, in November 1987. From 1989 until she was discharged, she worked as a test engineer in the company's defense systems department where she wrote and revised procedures used for testing of the payload system on highly classified items. In 1991, Davey learned that her immediate supervisor, Richard Turner, had given her a low ranking for layoff purposes. Davey filed an ethics complaint alleging Ronald Bills, her second-level supervisor, had engaged in favoritism toward male employees by treating them more favorably with respect to overtime pay, and that Bills engaged in discriminatory, gender-related promotional practices. Bills subsequently resigned from his supervisory position and Turner was removed from his supervisory position. In 1992, John Shupe, the new manager in Davey's department, informed her that she would be laid off. Her employment was terminated on April 12, 1993. LMC alleged Davey's position was eliminated and her duties were divided among other employees who had not been selected for layoff. Davey filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging sex

3

discrimination and retaliation, and the EEOC issued her a notice of right to sue on June 3, 1996. Davey filed this action on September 4, 1996.

In 1997, Davey learned of job openings in the test engineering area in LMC. Davey met with Gary Mueller, the technical staffing manager for the test department, but he informed her that Shupe had given him a new organizational chart and stated he did not intend to fill the open positions in test engineering. At the suggestion of Mueller, Davey contacted Wayne Scott about available test conductor positions. Scott informed Davey he would discuss the possibility of her filling one of the positions with other management employees, but later told her she would not receive a job offer.

## II.

As regards the punitive damages award, LMC contends the district court erred in not allowing LMC to present a material aspect of its case to the jury -- good faith compliance with Title VII. On Friday, August 20, 1999, the parties filed an amended pretrial order to reflect several additions, but were unable to agree on one addition – whether LMC could assert the affirmative defense that it could not be liable for punitive damages because it made a good faith effort to comply with Title VII. According to LMC, the newly-proposed affirmative defense was based on the recent decision in Kolstad v. American Dental Assoc., 527 U.S. 526 (1999). The amended pretrial order was filed with a space for the trial court to mark whether it granted or denied LMC's request to add the affirmative defense. At the beginning of trial on Monday, August 23,

4

1999, prior to selection of the jury, the court stated it would not allow LMC to assert that it made a good faith effort to comply with Title VII as a defense to punitive damages because allowing the defense would be "fundamentally unfair to the plaintiff." The court noted that the defense was factually intensive and "the plaintiff did not have an opportunity during the discovery phase of the case to take discovery as to whether or not there's a response to that defense." App. Tab 13 at 99.

A pretrial order, which measures the dimensions of the lawsuit, both in the trial court and on appeal, may be modified "only to prevent manifest injustice." Fed. R. Civ. P. 16(e). See Tyler v. City of Manhattan, 118 F.3d 1400, 1403 (10th Cir. 1997). The party moving to amend the order bears the burden to prove the manifest injustice that would otherwise occur. See Koch v. Koch Indus., Inc., 203 F.3d 1202, 1222 (10th Cir. 2000). The purpose of the pretrial order is to "insure the economical and efficient trial of every case on its merits without chance or surprise." See Hull v. Chevron U.S.A., Inc., 812 F.2d 584, 588 (10th Cir. 1987). Because the issues and defenses of the lawsuit are defined by the terms of the order, "total inflexibility is undesirable." Id..

We review the denial of a motion to amend a pretrial order for an abuse of discretion. See Koch, 203 F.3d at 1222. A district court can abuse its discretion when it "bases its ruling on an erroneous conclusion of law," Kiowa Indian Tribe v. Hoover, 150 F.3d 1163, 1165 (10th Cir. 1998), or "fails to consider the applicable legal standard," Ohlander v. Larson, 114 F.3d 1531, 1537 (10th Cir. 1997).

5

In Kolstad, the Court provided a framework for the award of punitive damages under 42 U.S.C. § 1981a(b)(1).[3] First, the plaintiff must establish that the employer acted with knowledge that its actions violated federal law. See 527 U.S. at 535. If able to do so, the plaintiff must then demonstrate that the actions of the employee who discriminated against the plaintiff is a managerial agent who acted within the scope of employment. See id. at 543. The Court in Kolstad also provided employers with a defense to punitive damages. The Court stated that even if the plaintiff establishes that the employer's managerial employees recklessly disregarded federally-protected rights while acting within the scope of employment, punitive damages will not be awarded if the employer shows that it engaged in good faith efforts to comply with Title VII. See id. at 545-46. Such a defense was proper, the Court stated, because of the common law limitation on vicarious liability for punitive damages. See id. at 544. The Court also noted that allowing vicarious punitive liability, regardless of compliance efforts, would in effect not only reduce an employer's incentive to implement anti-discrimination programs, but could penalize those employers who do educate themselves and their employees. See id. at 544-45. Accordingly, the Court set forth the good-faith defense to punitive damages in

_____

[3] Section 1981a(b)(1) provides that a prevailing Title VII plaintiff may be awarded punitive damages if she "demonstrates that [the defendant] engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to [her] federally protected rights." 42 U.S.C. § 1981a(b)(1). Prior to Kolstad, the precise burden a plaintiff had to carry to prove malice or recklessness was the source of a conflict among the circuits. See Baty v. Willamette Indus., Inc., 172 F.3d 1232, 1244 n.6 (10th Cir. 1999).

Title VII cases:

> Recognizing Title VII as an effort to promote prevention as well as remediation, and observing the very principles underlying the Restatements' strict limits on vicarious liability for punitive damages, we agree that, in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good faith efforts to comply with Title VII.

Id. at 545 (internal quotation omitted).

This court has recently stated that "[i]t is unclear whether the good-faith-compliance standard set out in Kolstad represents an affirmative defense on which the defendant bears the burden of proof or whether the plaintiff must disprove the defendant's good faith compliance with Title VII." Cadena v. The Pacesetter Corp., 224 F.3d 1203, 1209 n.4 (10th Cir. 2000).[4] We have additionally opined that "Kolstad provides us no definitive standard for determining what constitutes good-faith compliance with" Title VII. EEOC v. Wal-Mart Stores, Inc., 187 F.3d 1241, 1248 (10th Cir. 1999). However, at a minimum, an employer must at least adopt anti-discrimination policies and make a good faith effort to educate its employees about these policies and Title VII's

---

[4] Other circuits, however, have determined the defense is an affirmative one. See Zimmerman v. Associates First Capital Corp., 251 F.3d 376, 385 (2nd Cir. 2001); Romano v. U-Haul Int'l, 233 F.3d 655, 670 (1st Cir. 2000) cert. denied, 122 S. Ct. 41 (2001); Passatino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 516 (9th Cir. 2000); Deffenbaugh-Williams v. Wal-Mart Stores, Inc., 188 F.3d 278, 286 (5th Cir. 1999). See also Ogden v. Wax Works, Inc., 214 F.3d 999, 1009 (8th Cir. 2000) and Lowery v. Circuit City Stores, Inc., 206 F.3d 431, 445 (4th Cir. 2000) (describing Kolstad defense as an exception to vicarious liability).

7

prohibitions.  See id. at 1248-49.  "Kolstad itself suggests that the good-faith-compliance standard requires the employer to make 'good faith efforts to *enforce* an anti-discrimination policy.'"  Cadena, 224 F.3d at 1210 (quoting Kolstad, 527 U.S. at 546).  Thus, "even if an employer-defendant adduces evidence showing it maintains on paper a strong non-discrimination policy and makes good faith efforts to educate its employees about that policy and Title VII, a plaintiff may still recover damages if she demonstrates the employer failed to adequately address Title VII violations of which it was aware."  Id.

Kolstad was decided two months prior to commencement of this trial.  The original pretrial order was filed a year and a half prior to the Kolstad decision.  As stated, the district court did not allow LMC the benefit of the Kolstad defense because Davey had not had the opportunity to conduct discovery on the issue and, therefore, allowing the defense would be "fundamentally unfair" to plaintiff.  We consider the following factors in a challenge to a district court's denial of a motion to amend the pretrial order and resulting exclusion of an issue: "(1) prejudice or surprise to the party opposing trial of the issue; (2) the ability of that party to cure any prejudice; (3) disruption by inclusion of the new issue; and (4) bad faith by the party seeking to modify the order."  Koch, 203 F.3d at 1222.  We also take into consideration the timeliness of the movant's motion to amend the order.  See id. at 1223.

*Prejudice/surprise/timeliness*

The district court's denial of LMC's proposed amendment rested entirely on

8

prejudice to Davey. Davey argues the district court's decision was correct because the request was contained in the amendments to the pretrial order filed on the Friday before trial was to begin the following Monday and she could not have conducted any meaningful discovery over the weekend while also preparing for the trial. LMC responds that Davey could have moved to continue the trial.

In Moss v. Feldmeyer, 979 F.2d 1454 (10th Cir. 1992), this court affirmed the district court's admission of testimony from two expert witnesses either not listed or not fully described in the initial pretrial order. The district court permitted defendant to amend the pretrial order to add Dr. DeJong as an expert witness and to expand the scope of Dr. Evans' testimony on the morning of trial. The court reasoned that the opposing party, the plaintiff, was not prejudiced or surprised by the additions because

> both doctors were designated as witnesses in the [amended] pretrial order; Dr. DeJong was designated as an expert more than two weeks before the trial; [the plaintiff] received a summary of both doctors' reports prior to their trial testimony; both doctors were available for discovery prior to testifying; and [the plaintiff], at her option, deposed Dr. DeJong but did not depose Dr. Evans.

Id. at 1459. The court contrasted the facts in Moss with the facts in Smith v. Ford Motor Co., 626 F.2d 784 (10th Cir. 1980), where the prejudice factor was found to weigh in favor of the opposing party. See Moss, 979 F.2d at 1459. In Smith, the "surprise" testimony was presented *during* the trial. See Smith, 626 F.2d at 788-89. One of the plaintiff's witnesses, Dr. Freston, was listed in the pretrial order as a treating physician. However, to the defendant's surprise, Dr. Freston was allowed to give an expert opinion

9

on the cause of the plaintiff's injury. Counsel for the defendant was granted only a ten-minute recess to prepare a cross-examination. Thus, we found that defendant was prejudiced by the new expert testimony. The court noted, however, that "[i]f Ford had been apprised in advance of Dr. Freston's testimony, it could have taken his deposition, discovered the article, and been well prepared at trial to cross-examine him." Id. at 798.

In Summers v. Missouri Pacific R.R. System, 132 F.3d 599, 604 (10th Cir. 1997), this court reversed the denial of a motion to amend a pretrial order to add an expert witness, relying on the fact that the motion was filed *prior* to trial and therefore, trial would not be disrupted. See id. at 605. Thus, the timing of the motion in relation to commencement of trial is an important element in analyzing whether the amendment would cause prejudice or surprise. Here, the amended pretrial order was filed on Friday, August 20, and trial was to begin the following Monday, August 23. Trial had not started and therefore could not have been disrupted. However, LMC's motion to amend was untimely given the two-month period that had elapsed between the filing of the Kolstad decision and the filing of LMC's motion to amend the pretrial order.

*Ability to cure*

Closely related to the prejudice and surprise factor is whether the opposing party had the ability to cure any prejudice or surprise caused by the amendment. For example, in Smith, we found this factor weighed in favor of the defendant because after the witness gave "surprise" expert testimony, the defendant's counsel had only ten minutes to prepare

10

for cross-examination and to review the witness' use of an empirical study not disclosed during discovery. See Smith, 626 F.2d 798-99. If, however, the motion to amend is made *prior* to trial, it is more easily found that the opposing party could cure any prejudice. See, e.g., Summers, 132 F.3d at 605 (finding second factor weighed in favor of granting the plaintiff's motion to amend to add two expert witnesses because motion was filed eighty days prior to trial, giving the defendant time to conduct discovery). See also, Moss, 979 F.2d at 1459 (holding "whereas Ford had only [ten] minutes to prepare for cross-examination, Moss had over two weeks to prepare for Dr. DeJong's cross-examination and eight days to prepare for Dr. Evans' cross-examination, during which time, in each instance, Moss had their respective reports. Under these circumstances, we hold that Moss' ability to cure was not significantly impaired.").

LMC argues Davey easily could have cured any prejudice or surprise by moving to continue the trial. See Hull v. Chevron U.S.A., Inc., 812 F.2d 584, 588 (10th Cir. 1987) (stating that if opposing party was surprised by new theory of recovery first discussed in plaintiff's opening statement, "it should have moved for a continuance of the trial with sufficient support to satisfy the trial court that additional time was needed to meet the change in theory"). Davey responds that a continuance would have prejudiced her because of the availability and fading memories of the witnesses. She reasons that she would "have been forced to choose between having the ability to obtain discovery on [the] new affirmative defense and having her case tried within three years of the date that

11

she filed her complaint." Answer Br. at 13.

Davey's concerns, however, should not be able to justify the district court's failure to apply Kolstad. Our willingness to apply Kolstad *after* a district court enters judgment does not support her contention. See Cadena, 224 F.3d at 1209-10; Wal-Mart Stores, 187 F.3d at 1246. In Wal-Mart, we found that under the standard of Kolstad, there was sufficient evidence to justify an award of punitive damages. 187 F.3d at 1246. One could read Wal-Mart as suggesting that if the record evidence had been insufficient to resolve the Kolstad issue, we would have remanded the case for new trial. Similarly, in Cadena, the employer argued it was entitled to a new trial on punitive damages because the jury was not instructed on the Kolstad defense. 224 F.3d at 1210. Although we determined the employer had waived the issue, one could conclude that, absent the waiver, we would have allowed it the benefit of the Kolstad defense even though Kolstad was decided *after* judgment was entered. A remand in either Wal-Mart or Cadena would have resulted in an even greater potential for the loss of witness memory than in the present case where only a short continuance was needed to provide sufficient time for additional discovery.

*Disruption*

The third factor to be considered is whether the amendment to the pretrial order would "disrupt the orderly and efficient trial of the case or other cases in court." Smith, 626 F.2d at 797. In Smith, we concluded this factor did not weigh in favor of amending the pretrial order because the challenged testimony first was revealed in the midst of the

12

trial. Adjournment of the trial for depositions would have resulted in significant disruption. However, if the motion to amend is made *prior* to trial, no disruption of an ongoing trial is threatened. See, e.g., Moss, 979 F.2d at 1459 (stating no disruption of trial threatened because additional expert witnesses and their respective reports were made available to plaintiff prior to their testimony). In this case, a continuance might have been necessary so Davey could conduct discovery on the Kolstad defense, but because the trial had not started when the motion to amend was made, disruption to the trial process would have been minimal. In its reply brief, LMC states that Davey had already deposed most of the witnesses who would have testified regarding LMC's good faith compliance with Title VII. See Reply Br. at 7. Therefore, re-deposing these witnesses on the limited issue of good faith compliance would not have been a lengthy process. We acknowledge a continuance may have caused disruption of other cases scheduled for trial on the court's docket.

*Bad faith*

Finally, the court must consider the "bad faith or willfulness in failing to comply with the court's order." Smith, 626 F.2d at 797. In this case, the district court, at the time of denying LMC's motion, stated "I'm not criticizing the defense because [Kolstad] wasn't issued until June [22], 1999." App. Tab 13 at 100. There is no evidence LMC acted with any bad faith or willful disregard of the order. Instead, it merely wanted to amend a pretrial order to reflect a defense recently set forth in a Supreme Court opinion.

13

While the untimeliness of LMC's motion weighs against LMC, the other factors weigh in favor of allowing LMC to amend the pretrial order to assert its defense to punitive damages. We conclude the district court abused its discretion in not allowing LMC to assert its defense and vacate the jury's punitive damage award and remand for new trial limited to the issue of punitive damages.

III.

LMC asserts the district court's instructions to the jury on mixed-motive discrimination (Instructions Nos. 18 and 23) inaccurately described the law under Price Waterhouse v. Hopkins, 490 U.S. 228 (1998).

We review de novo the question of whether the court's instructions, as a whole, properly stated the applicable law and focused the jury on the relevant inquiry. Id. "[A]n error in jury instructions will mandate reversal of a judgment only if the error is determined to have been prejudicial, based on a review of the record as a whole." Big Horn Coal Co. v. Commonwealth Edison Co., 852 F.2d 1259, 1271 n.19 (10th Cir. 1988).

Instruction No. 18 provided in pertinent part:

> The mere fact that plaintiff is a woman and was laid off is not sufficient in and of itself to establish plaintiff's sex discrimination claim under the law. In showing that plaintiff's sex was *a motivating factor*, plaintiff is not required to prove that her sex was *the sole motivation or even the primary motivation* for defendant's decision. The plaintiff need only prove that sex *played a part* in the defendant's decision even though other factors may have *also motivated* the defendant.

Aplt. App. at 143 (emphasis added). Instruction No. 23 provided in pertinent part:

14

In showing that plaintiff's opposition to sex discrimination or her filing of a charge of discrimination or a lawsuit was *a motivating factor or factors*, plaintiff is not required to prove that this opposition or the filing of a charge of discrimination or lawsuit [was] *the sole motivation or even the primary motivation* for defendant's decision. The plaintiff need only prove that her opposition to sex discrimination or the filing of a charge of discrimination or lawsuit *played a part* in the defendant's decision, even though other factors may *also have motivated* the defendant.

Id. at 145-46 (emphasis added). LMC is not arguing that the jury should not have been given a mixed-motive instruction. Rather, LMC argues that the mixed-motive instructions were improperly worded. LMC argues the instructions should have stated "played a *motivating* part" instead of "played a part." LMC timely objected to both instructions. The district court overruled LMC's objections, stating that the instructions were "consistent with the law," adequately used the word "motivating" several times, and that the language "came directly from Devitt and Blackmar and it came from the most recent edition." Id. at 122, 124.

In Thomas, we explained mixed-motive cases:

In Price Waterhouse v. Hopkins, [490 U.S. 228 (1989)], the Supreme Court held that when a discrimination case challenges an employment decision that may have been "the product of a mixture of legitimate and illegitimate motives, . . . it simply makes no sense to ask whether the legitimate reason was the true reason." Id. at 247. The Court therefore rejected the argument that "the plaintiff in a mixed-motives case must squeeze proof into Burdine's framework." Id. at 246-47. The Court held that "once a plaintiff . . . shows that [an improper motive] played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed [the improper motive] to play such a role." Id. at 244-45.

111 F.3d at 1511 (internal quotations omitted). The Price Waterhouse Court described

the mixed-motive approach as "most appropriately deemed an affirmative defense." 490 U.S. at 246. "[O]nce a plaintiff has shown that an improper reason was a *substantial or motivating factor* in the defendant's adverse treatment, the employer must prove by a preponderance of the evidence that it would have reached the same decision even absent the improper motive." Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1471 (10th Cir. 1992) (emphasis added).

Section 107(a) of the Civil Rights Act of 1991, codified at 42 U.S.C. § 2000e-2(m), overruled Price Waterhouse to the extent that the case held a defendant's proof that it would have made the same decision absent the improper motive would allow the defendant to completely avoid liability. See Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 552 (10th Cir. 1999) (exploring effect 1991 amendment had on Price Waterhouse and holding case continued to control when mixed-motive instruction was appropriate).

> Both the 1991 amendments to Title VII and Price Waterhouse shift the burden to the employer to prove it would have taken the same action even in the absence of the unlawful motive. The only difference between the Price Waterhouse standard and § 2000e-2(m) is the legal consequence of a finding that the employer would have taken the same action even in the absence of the unlawful motive. Under Price Waterhouse, the defendant avoids a finding of liability altogether. Under the 1991 amendments, defendant is still liable but plaintiff is limited in what forms of relief she may receive.

Medlock, 164 F.3d at 553 n.5. "[I]f the employer successfully demonstrates that the outcome would have been the same even without discriminatory animus, the court may not award monetary damages but may award certain declaratory and injunctive relief, as

16

well as attorney fees and costs demonstrated to be directly attributable to pursuing a claim under Section 107(a)." Watson v. Southeastern Pennsylvania Transp. Auth., 207 F.3d 207, 216 (3d Cir. 2000).

We acknowledge that by instructing the jury that Davey need only prove the discriminatory motive "played a part" (rather than "played a substantial part" or "played a motivating part"), the district court may have impermissibly lessened Davey's burden of proof before the burden of persuasion was shifted back to LMC. However, even if after reading the two instructions in their entirety one could conclude the jury would not see that the improper motive needed to play a motivating part (both instructions described Davey's burden as showing that the improper motive was "a motivating factor"), the difference such an error would have had on the ultimate outcome would not rise to a level that could be found to be prejudicial to LMC. The two instructions given by the district court are sufficiently similar to the instruction we recently approved in Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1111 (10th Cir. 2001), cert. denied, 2002 WL 232982 (2002).

IV.

LMC also argues the district court erred in granting one of Davey's Batson challenges to LMC's peremptory strikes. LMC's peremptory strikes were made to three women, whereupon Davey challenged them under Batson. After explaining the burden-shifting approach articulated in Batson, the district court asked whether counsel for LMC

17

believed Davey had made a prima facie case of gender discrimination. Counsel for LMC replied: "No, I don't. Given the number of females that are still left on the jury. There would still be four." Aplt. App. at 106.[5] The court agreed with Davey and found a prima facie case of gender discrimination.

The district court directed LMC to explain its gender-neutral grounds for striking the three potential jurors. Counsel for LMC explained:

> [T]here's a common basis for striking actually all three of those people. And that is none of them work in a workplace setting. This is a case of discrimination, alleged discrimination in the workplace. They need to understand concepts such as performance evaluations, rankings, what supervisors are confronted with on a day-to-day basis is something that would be useful to the jurors' understanding of the case. [Ms. Elder] is not working outside of the home. Miss Whitely is not working outside of the home, and Miss Murley is not working for an employer but works for herself selling Mary Kay cosmetics. So frankly, the major basis for striking each one of them is *that they do not have current employers* and so they would not have that perspective to bring to their deliberations.

Id. at 108-09 (emphasis added). In response, Davey's counsel argued:

> Your Honor, *that's clearly pretexual*. Let's take [Ms. Elder]. [Ms. Elder] worked for ten years as a nurse. She was a head nurse. Had responsibilities for other individuals whom she was supervising as a nurse. She clearly was someone who was aware of policies and procedures. Nurses have to follow those policies, and clearly she knew about personnel policies because that was her job.

Id. at 109 (emphasis added). Counsel for LMC argued that Ms. Elder had been out of the

---

[5] LMC points out that prior to its peremptory challenges, Davey exercised her challenges by striking three men. However, LMC did not raise a Batson objection. See Hidalgo v. Fagen, Inc., 206 F.3d 1013, 1019-20 (10th Cir. 2000) (failure to raise Batson objection in trial court results in appellate court review for plain error).

18

workplace for fourteen years and the reason she was struck was because she did not have *current* employment. The district court found:

> [Counsel for LMC] noted that this is a case of discrimination, alleged discrimination, in the workplace. They need to understand concepts such as performance evaluation rankings, what supervisors are confronted with on a day-to-day basis is something that would be useful to the jurors' understanding in this case.
>
> Now, it seems to me that [Ms. Elder], if she worked as a nurse in some major hospitals for ten years and supervised up to eight people, would have had an ability to do those things that are the objection – would have had an opportunity to do the very things that [counsel for LMC] said is a primary reason for striking her.
>
> So I do find that striking of [Ms. Elder] is based on gender discrimination; and so under the law that I've already cited, I'm going to invalidate that peremptory challenge and will require the defendant to strike another juror.

Id. at 118-19. Counsel for LMC attempted to give additional reasons for striking Ms. Elder, but the district court dismissed the reasons because they were not stated originally.

In Batson, the Court held that the Equal Protection Clause of the Fourteenth Amendment forbids a prosecutor to use peremptory challenges to exclude African-Americans from jury service because of their race. The prohibition was later extended to include gender discrimination, see J.E.B. v. Alabama, 511 U.S. 127 (1994), and to be applicable in civil cases, see Edmonson v. Leesville Concrete Co., 500 U.S. 614 (1991).

> Our commitment to equal justice under law, carved into stone outside the courthouse, would be mocked by allowing discriminatory peremptory challenges inside. The practice not only causes the silent sting of discrimination, it "mars the integrity of the judicial system and prevents the idea of democratic government from becoming a reality."

Hurd v. Pittsburg State Univ., 109 F.3d 1540, 1548 (10th Cir. 1997) (quoting Edmonson,

500 U.S. at 628).

In Purkett v. Elem, 514 U.S. 765, 767 (1995), the Court set forth a three-part burden-shifting approach to Batson challenges:

> Under our Batson jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of [gender] discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a [gender]-neutral explanation (step two). If a [gender]-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination.

See Heno v. Sprint/United Mgmt. Co., 208 F.3d 847, 855 (10th Cir. 2000) (stating that the "trial court should ask challenging counsel to respond to the race-neutral reasons which have been proffered" because "[t]his clearly defines the opposing positions, facilitates the district court's task by separating the second and third steps of the Batson test, and greatly aids appellate review").

We review de novo as a legal issue the proffered gender-neutral explanation, but review the court's ultimate finding of gender discrimination for clear error. See Hidalgo, 206 F.3d at 1019. LMC argues the district court concluded its proffered reason for the peremptory strike was not gender-neutral and therefore its decision should be reviewed de novo. Davey responds that the court's grant of her Batson objection was not that LMC's proffered reason was not gender-neutral, but that it was pretextual (i.e., made at the third step of the Batson analysis) and therefore a clear error standard is applicable. After reviewing the transcript, we conclude that a clear error standard should be applied.

20

LMC suggests that Davey failed to set forth a prima facie case of gender discrimination, arguing that four females remained on the jury after it had struck the three females. The presence of members of the subject gender on the final jury "is a relevant factor in negating an alleged Batson violation *when the [exercising party] has the opportunity to strike the juror.*" United States v. Johnson, 4 F.3d 904, 913 (10th Cir. 1993) (emphasis added). However, at the time the Batson challenge was made in this case, LMC had not had the opportunity to strike the other female jurors. Each party was given only three peremptory challenges. After the district court ruled that LMC could not strike Ms. Elder, LMC exercised its remaining peremptory challenge on yet another female. In any event, "the issue of whether [Davey] established a prima facie case of discrimination is moot because [LMC] gave [its] explanation of the peremptory challenge of [Ms. Elder] and the district court ruled on the ultimate question of intentional discrimination." United States v. Sneed, 34 F.3d 1570, 1580 (10th Cir. 1994). "Once a [gender] neutral reason is offered, the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal." Id. at 1579. "We will not disturb the district court's findings of fact unless, following a review of the entire evidence, we are left with a definite and firm conviction that a mistake has been committed." Purrington, 996 F.2d at 1032.

LMC's reason for striking Ms. Elder was that she did not have *current* employment. The district court's finding of pretext relied on the fact that Ms. Elder had

*past* employment. We must remind ourselves that a district court's ultimate finding of discrimination is based in large part on judging the credibility of the exercising party's counsel at the time the neutral reason for the challenge is made. See Hurd, 109 F.3d at 1547-48. We cannot say it was clearly erroneous for the district court to determine that LMC's explanation for striking Ms. Elder was pretextual.

## IV.

We VACATE the jury's award of punitive damages on the 1997 retaliation claim, vacate the award of attorney fees, and REMAND for new trial limited to the issue of punitive damages. The remainder of the judgment is AFFIRMED.