**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 4, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ANIBAL CANALES,

      Plaintiff-Appellant,

v.

R. JAMES NICHOLSON,* Secretary
of the Department of Veterans Affairs,

      Defendant-Appellee.

No. 04-1365
(D.C. No. 01-F-677 (BNB))
(D. Colo.)

---

**ORDER AND JUDGMENT***\*

---

Before **TYMKOVICH, McKAY**, and **BALDOCK**, Circuit Judges.

---

      Anibal Canales brought this action against the Department of Veterans

Affairs (VA), alleging that the VA had violated the Rehabilitation Act of 1973,

---

\*      On February 1, 2005, R. James Nicholson became the Secretary of the
Department of Veterans Affairs. In accordance with Rule 43(c)(2) of the
Federal Rules of Appellate Procedure, Mr. Nicholson is substituted for Anthony J.
Principi as the defendant in this action.

\*\*      After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

29 U.S.C. §§ 791-794, by failing to accommodate his disability. The case proceeded to jury trial, and the jury returned a verdict in favor of the VA, finding that Mr. Canales had not "prove[d] by a preponderance of the evidence that between November 12, 1998 and February 22, 2000, he had an impairment that substantially limited one or more of his major life activities." Aplt. App., Vol. I, at 135. Mr. Canales contends that the district court (1) should have granted his motion for judgment as a matter of law, finding that he had a substantially limiting disability and thus effectively removing the question of disability from the jury. He also argues that the district court (2) erred in failing to provide the jury with a closing instruction on the parties' factual stipulation, and (3) in denying his motion to amend the pretrial order to substitute an expert witness. Finding no reversible error in the issues raised, we affirm the judgment of the district court.

## Background

Mr. Canales' theory at trial was that he was a disabled person, within the meaning of the Rehabilitation Act, who was unable because of his disability to perform the essential functions of his job. He contended that the VA therefore had a duty to reasonably accommodate him by attempting to reassign him to another position that he could perform, given his impairments. Instead, after he

had been absent from work for many months, the VA terminated Mr. Canales' employment.

At the time his claim arose, the VA employed Mr. Canales in its Denver office as Assistant Regional Manager for Contracts. An essential function of Mr. Canales' job was travel to Readjustment Counseling Services offices located within nine of the states covered by his office, to conduct site visits. He traveled to twelve to fourteen offices annually, a process that took six or seven weeks out of the year. The travel, which often took him to offices located in rural areas, generally required him to fly to the nearest city, then to drive to the site to be visited.

Mr. Canales contended at trial that he suffered from two disabling conditions: interstitial cystitis and kidney stones.[1] One of the effects of his interstitial cystitis, he testified, was that it required him to have frequent access to a bathroom so that he could urinate every thirty minutes to an hour. The travel to rural areas required by his job, however, sometimes placed him in locations far from a bathroom.

---

[1] While Mr. Canales also presented evidence concerning other medical problems, including depression and heart problems, the jury was asked only to determine whether his interstitial cystitis and kidney stones were disabling. Aplt. App., Vol. VIII, at 1560-61.

Mr. Canales stipulated with the VA to certain facts in the case. The district court read this factual stipulation to the jury prior to the presentation of other evidence. One stipulation included the following fact, which plays a key role in Mr. Canales' arguments on appeal: "As of November 1998, Mr. Canales could no longer perform the essential functions of his job as Assistant Regional Manager, Contracts, for Region 4A of the Department of Veterans' Affairs, and could not be reasonably accommodated within that position." *Id.*, Vol. II, at 285.

Mr. Canales' counsel argued to the jury that by entering into this stipulation, the VA had essentially conceded Mr. Canales was disabled, leaving only the question of accommodation by reassignment to be decided. The VA, for its part, contended that it had stipulated only to Mr. Canales' inability to perform his current job, not to his being "disabled" within the meaning of the Rehabilitation Act. A centerpiece of the VA's trial strategy, in fact, was to question whether Mr. Canales was truly "disabled."

At trial and in support of their respective positions on the disability issue, the parties presented much conflicting testimony and many voluminous exhibits concerning the nature and effect of Mr. Canales' alleged impairments. We summarize the evidence from Mr. Canales and his doctors concerning his medical condition (viewed most favorably to the VA as the prevailing party at trial) as follows:

-4-

### 1.  Mr. Canales

While Mr. Canales' medical problems apparently first manifested themselves in the mid 1970s, he testified that they became significantly worse in 1997 and 1998.  According to his testimony, eventually he was unable to come to work at all due to severe pain, nausea, difficulty breathing, chest pains, exhaustion, and difficulty focusing.

### 2.  Dr. Gidday

Mr. Canales' former treating physician, Dr. Lisa Gidday, testified as a witness for the VA.  She stated that Mr. Canales had complained to her of "intermittent severe mid to lower quadrant pain."  *Id.*, Vol. III, at 388.  She ordered a number of tests on his kidneys, ureters, and bladder, each of which came back essentially normal.[2]  On May 5, 1998, a test of Mr. Canales' urine detected blood, but a further test did not uncover any kidney stones.  Mr. Canales continued to complain of pain and to claim that he was passing kidney stones.  At one point he was hospitalized for the pain, but no kidney stones were found.

Dr. Gidday found it unusual that a urinalysis in her office showed blood in Mr. Canales' urine, while a urinalysis conducted at the hospital upon his later admission did not.  At trial she testified that she came to believe that he had

---

[2]     One of the tests showed a thickened gallbladder wall and a small renal cyst. Another test detected a calcification known as a phlebolith.  These abnormalities were not disease-causing, however.

tampered with the test. Tests conducted by other specialists to whom she referred Mr. Canales consistently came back negative. Although prior tests had confirmed that Mr. Canales had passed kidney stones, a "kidney stone" he brought to her turned out, on laboratory analysis, to consist of inorganic material that did not come from a human body, inconsistent with a kidney stone. Dr. Gidday prescribed various narcotics for Mr. Canales to deal with his pain. She ultimately concluded that Mr. Canales had become "excessively symptomatic" and was perhaps engaged in "drug-seeking behavior." *Id.* at 416-17.

Dr. Gidday stated that she had not placed any limitations on Mr. Canales' ability to work full time, to sit, to drive, or to travel. Although in December 1998 she wrote a letter to Mr. Canales' employer stating that he might require short term disability depending on the results of upcoming tests, in January 1999 she refused to write a letter stating he was unable to work, because, as she informed him in a letter, "at this time I feel you are able to work and I am unable to state otherwise." *Id.*, Vol. VII, at 1239, 1241. She ultimately stopped treating Mr. Canales, because she no longer trusted him.

### 3. Dr. Swartz

After Dr. Gidday stopped treating Mr. Canales, he obtained treatment from an osteopath, Dr. Swartz. Dr. Swartz's deposition testimony was generally favorable to Mr. Canales. He diagnosed Mr. Canales with interstitial cystitis and

kidney stones and provided him with "compassionate pain management," including painkillers, *id.*, Vol. V, at 1019. He stated that Mr. Canales could work, with accommodation and with appropriate medical management.

Dr. Swartz used a number of treatment methods that the VA's expert witnesses characterized as questionable. For example, Dr. Horne, a urologist, testified that interstitial cystitis cannot be diagnosed by feeling the bladder from outside of the body, or by attempting to detect excessive heat radiating from the bladder, or from listening to the bladder, which makes no noise. Nor can interstitial cystitis be treated by visceral manipulation of the abdomen. These statements cast doubt on Dr. Swartz's use of "manual-thermal diagnoses," "visceral listening over the bladder," and "visceral manipulation" to diagnose and treat Mr. Canales' medical problems. *See id.*, Vol. V, at 1014; Vol. VII, at 1365.

### 4. Dr. Horne

Dr. Horne, who also had treated Mr. Canales, cast significant doubt on Mr. Canales' asserted illnesses. He stated that "there were no abnormal findings on the vast majority of those studies that were done." *Id.*, Vol. III, at 490. His own studies, and those of others, had failed to detect any objective abnormalities. Dr. Horne stated that he had treated Mr. Canales as if he had interstitial cystitis, based on Mr. Canales' subjective symptoms. He read from one of his medical records, however, in which he opined "I think [Mr. Canales] has convinced

-7-

himself that he has a major medical or surgical problem, when really none exists." *Id.* at 502. From a urological standpoint, Dr. Horne could find no disabling impairment, and he stated Mr. Canales was able to travel except when he was actively passing a kidney stone.

### 5. Dr. Eckstein

While Dr. Eckstein did not testify at trial (for reasons discussed further, *infra*), written evidence of his treatment of Mr. Canales was presented to the jury. In a letter dated January 26, 2000, he stated that Mr. Canales had been diagnosed with interstitial cystitis by cystoscopy in November 1999. He characterized Mr. Canales as "partially disabled due to his chronic pain and fatigue," *id.*, Vol. VII, at 1207, and placed restrictions on his work hours and other activities, including avoiding physical strain, lifting or carrying more than five pounds, and bending, squatting, climbing or reaching.

## Analysis

### 1. Standards of review

"We review a district court's denial of a party's motion for judgment as a matter of law de novo, applying the same standard as the district court and construing the evidence in the light most favorable to the nonmoving party." *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1235 (10th Cir. 2006) (italics omitted). "Judgment as a matter of law is appropriate only if the evidence points

but one way and is susceptible to no reasonable inferences which may support the opposing parties' position." *Id.* (quotation marks omitted).

"We review the denial of a motion to amend a pretrial order for an abuse of discretion." *Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1208 (10th Cir. 2002). The district court's decision to give a particular jury instruction is also reviewed for an abuse of discretion, while "[t]he instructions given are reviewed de novo to determine whether, in their entirety, they correctly state the governing law." *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 606 (10th Cir. 1997).

**2. Mr. Canales' entitlement to judgment as a matter of law**

Mr. Canales contends that the district court should have granted his motion and renewed motion for judgment as a matter of law, because the evidence established as a matter of law that he was disabled for purposes of the Rehabilitation Act. The Rehabilitation Act prohibits discrimination against an "otherwise qualified individual with a disability." 29 U.S.C. § 794. The Act defines the term "disability" in pertinent part as "a physical or mental impairment that substantially limits one or more major life activities." *Id.* § 705(9)(B).[3]

---

[3]     The standards used to determine whether an act of discrimination violates the Rehabilitation Act are the same standards applied under the Americans with Disabilities Act ("ADA"). 29 U.S.C. § 794(d). We therefore rely on certain ADA cases in the course of this order and judgment.

To make out his claim for violation of the Rehabilitation Act, Mr. Canales was required to prove, by a preponderance of evidence, (1) that he had interstitial cystitis accompanied by recurrent kidney stones; (2) that this condition substantially limited his ability to perform one or more major life activities, which he identified as "walking, lifting, carrying, sitting, sleeping, caring for himself, focusing and concentrating"; and (3) that the VA failed to reasonably accommodate his disability by reassigning him to another position. Aplt. App., Vol. VIII, at 1560. Given the medical evidence presented at trial and the opinions of Mr. Canales' doctors, we cannot say that the evidence pointed but one way, requiring the jury to reach a conclusion that Mr. Canales was *substantially* limited in one or more of the major life activities he identified by the impairments he asserted. Nor can we say that the jury could not have drawn reasonable inferences from the evidence that would support the VA's position that Mr. Canales was not disabled within the meaning of the Act. As noted, the testimony of Dr. Gidday and Dr. Horne would have permitted the jury to reach a finding unfavorable to Mr. Canales on this issue.

Mr. Canales contends, however, that the jury's finding that he was not disabled is inconsistent with the parties' stipulation that he could not perform the essential functions of his existing position with the VA and could not be reasonably accommodated within that position. We disagree. The stipulation did

not resolve the question of "disability," which was correctly defined in the jury instructions as the state of being substantially limited in one's ability to engage in a major life activity. *Id.* at 1560-62. The only reference in the instructions to the subject of the stipulation, Mr. Canales' inability to perform his current job, came when the jury was instructed that the duty to accommodate an employee by reassigning him arises "[w]hen a federal employee becomes unable to perform the essential functions of his position even with reasonable accommodation *due to a disability*." *Id.* at 1563 (emphasis added).

The instruction we have just cited required Mr. Canales to prove three elements: that he was (1) unable to perform the essential functions of his position (2) even with reasonable accommodation (3) due to a disability. The VA stipulated only *to the first two of these elements*, that "Mr. Canales could no longer perform the essential functions of his job as Assistant Regional Manager" and that he "could not be reasonably accommodated within that position." *Id.*, Vol. II, at 285 (stipulated fact #8). Notably, it did *not* stipulate that the reason for Mr. Canales' inability to perform these essential job functions was that Mr. Canales was "disabled" within the meaning of the Rehabilitation Act. As the jury verdict form indicated, Mr. Canales retained the burden of proving that element at trial.

Mr. Canales argues, however, that it was simply not possible, as a matter of logic and inference, for the jury to have found that he could not perform the essential functions of his job, with or without accommodation, without also finding that he was disabled. He contends that the only possible inference to be drawn concerning the reason for his inability to perform his job was that he was substantially limited in his ability to perform one or more major life activities. Again, we disagree.

Testimony at trial permitted the jury to find that the reason Mr. Canales could not perform his job as Assistant Regional Manager, Contract, for Region 4A of the VA, lay in his inability to travel long distances between regional offices in order to conduct required site visits, an essential function of that position. Aplt. App., Vol. V at 1054-55. An inability to travel long distances between job sites, however, is simply not the sort of substantial limitation of the major life activities Mr. Canales identified (walking, lifting, carrying, sitting, sleeping, caring for himself, focusing and concentrating) that would require the jury to conclude that Mr. Canales was disabled. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200-01 (2002) (stating, with regard to major life activity of performing manual tasks, that "the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with [his]

-12-

specific job"). *Cf. Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 885 (9th Cir. 2004) (concluding "travel" is not major life activity, and even if it were, inability to travel extensively is not substantial limitation on traveling); *Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship*, 209 F.3d 678, 683-86 (7th Cir. 2000) (holding a phobia that restricted employee from driving in unfamiliar places did not substantially limit employee's ability to perform specified major life activity of working).

Drawing every reasonable inference in favor of the jury's verdict, its conclusion that Mr. Canales was not disabled is not inconsistent with a stipulation that he was unable to fulfill the essential functions of his existing job with the VA. We therefore affirm the district court's denial of Mr. Canales' motion and renewed motion for judgment as a matter of law.

### 3. Failure to re-instruct jury concerning stipulated facts

At the beginning of trial, the district court read to the jury the parties' factual stipulation. Mr. Canales submitted a closing instruction that would have reminded the jury of the factual stipulation and would have informed the jury that it must treat the facts therein as having been proved. Aplt. App., Vol. VIII, at 1573-74. The district court refused to give this instruction, noting that the factual stipulation was, in fact, factual, and concluding that there was no duty to give it any greater weight than other facts presented by including it in the jury

-13-

instructions. *Id.*, Vol. VI, at 1105-06. Mr. Canales does not cite a single case, and we have found none, holding that where a district court has presented the jury with the parties' factual stipulation at the outset of trial, it must upon request, remind the jury of the factual stipulation in its closing instructions.[4]

Moreover, the instructions in this case, taken as a whole, adequately informed the jury of its duty with regard to the stipulation. The jurors were told to "carefully and impartially consider all the evidence," *id.*, Vol. VIII, at 1545; that "those facts which have been admitted or agreed to" were "evidence in the case," *id.* at 1546; that "[t]he evidence in the case consists of . . . all facts which have been admitted or stipulated to," *id.* at 1551; and that "[w]hen, as here, the attorneys on both sides agree as to the existence of a fact, or a fact has been admitted or stipulated, the jury must regard that fact as proved," *id.*

In any event, Mr. Canales was not limited in highlighting the stipulation in his closing argument to the jury. It is hard to find prejudice in the court's failure to further highlight the stipulated facts in a jury instruction.

_____

[4] There is some authority from other circuits indicating that the matter of whether to provide the jury with a closing instruction incorporating the parties' factual stipulations is best left to the discretion of the district court. While such an instruction is permissible, particularly where the stipulated facts are complex, *see Garnes v. Gulf & W. Mfg. Co.*, 789 F.2d 637, 643 (8th Cir. 1986) (finding "no merit" to claim that stipulated facts instruction unduly highlighted the admitted facts), it does not appear to be mandatory, *see Johnson v. Sawyer*, 120 F.3d 1307, 1331 (5th Cir. 1997) ("The district court refused to read to the jury the facts stipulated in the pre-trial order. This is [a] question best left to the court on remand.")

**4. Denial of motion to amend pretrial order**

In the final pretrial order in this case, Mr. Canales listed Dr. Swartz as an expert witness. On March 22, 2004, three and one-half weeks before trial was scheduled to begin, Mr. Canales filed a motion to amend the pretrial order, stating that Dr. Swartz was traveling in Mexico and would be unavailable at trial. Mr. Canales requested that Dr. Swartz be allowed to testify through the use of his prior deposition, and that he be permitted to call Dr. Eckstein as an additional medical expert. The VA objected, contending (among other things) that it would be prejudiced if a new expert were brought into the case so close to trial. The district court granted Mr. Canales' motion in part, permitting Dr. Swartz to testify by deposition, but denied him leave to endorse an additional expert witness.

Mr. Canales contends that the district court abused its discretion in denying his motion to amend the pretrial order to endorse Dr. Eckstein as an expert witness at trial. A pretrial order may be modified "only to prevent manifest injustice." Fed. R. Civ. P. 16(e). "The party moving to amend the order bears the burden to prove the manifest injustice that would otherwise occur." *Davey*, 301 F.3d at 1208. When reviewing the district court's denial of a motion to amend the pretrial order and the resulting exclusion of a witness, we consider the following four factors: "(1) prejudice or surprise to the party opposing trial of the issue; (2) the ability of that party to cure any prejudice; (3) disruption by

-15-

inclusion of the new issue; and (4) bad faith by the party seeking to modify the order." *Id.* at 1210 (quotation omitted). We also consider the timeliness of the motion to amend. *Id.*

A magistrate judge assigned to this case concluded that the VA would be both surprised and prejudiced if he permitted late designation of Dr. Eckstein as an expert witness for Mr. Canales. Expert witness designations had been due in December 2001, Dr. Eckstein appeared to have a different opinion than Dr. Swartz concerning the nature of Mr. Canales' disability, and Mr. Canales had known of Dr. Eckstein's opinion since January 2000 and could have designated him as a witness long before trial. Moreover, Mr. Canales had failed to provide the VA with an expert witness report from Dr. Eckstein or to supply the VA with his underlying medical records.

The magistrate judge next found that with only two weeks remaining between his hearing on the motion and the trial, as a practical matter, the VA would not have time to cure any prejudice by deposing Dr. Eckstein and would not have sufficient time to prepare to rebut his opinions. The VA did not have an expert witness report from Dr. Eckstein and would not have time to identify a rebuttal expert who could prepare his own opinions.

Permitting the late designation of a new expert could also lead to a continuance of the trial. The trial had previously been continued at Mr. Canales'

request, and the case was already an old one, having been filed nearly three years earlier. Therefore, amending the pretrial order would disrupt the orderly and efficient trial of the case.

Finally, the magistrate judge determined that Mr. Canales had shown a lack of diligence in filing his motion. It was Mr. Canales' responsibility to assure the availability of his experts for trial. While Mr. Canales' counsel had come into the case fairly late, there was no indication that Dr. Swartz had been called out of the country unexpectedly; rather, he had sold his medical practice. The magistrate judge concluded that there would be no manifest injustice to Mr. Canales if Dr. Swartz's testimony were presented by deposition, rather than in person.

The district court affirmed the magistrate judge's order, citing many of the same reasons given by the magistrate judge. It further noted that it had rescheduled the trial date, which it hoped would alleviate the unavailability of Dr. Swartz. (Apparently, it did not, as Dr. Swartz's testimony was presented by deposition.)

We conclude that the district court did not abuse its discretion in denying Mr. Canales' motion to amend the pretrial order. While we have found no prejudice to the non-moving party where the amendment was sought even closer to trial than in this case, here the district court permissibly relied on the absence of an expert witness report as an additional factor creating prejudice to the

-17-

defense. *See Moss v. Feldmeyer*, 979 F.2d 1454, 1459 (10th Cir. 1992) (holding district court did not abuse its discretion by permitting plaintiff to add physician as expert witness two weeks before trial, where plaintiff received summary of physician's testimony, and physician was designated as witness in pretrial order); *see also Summers,* 132 F.3d at 605 (reversing denial of leave to amend where leave was sought eighty days before trial and "[t]he presentation of [the expert's] preliminary reports was sufficient to put everyone concerned on notice [about] the subject matter of [his] proposed testimony").

In addition, we agree with the district court that it was Mr. Canales' lack of diligence in attempting to obtain Dr. Swartz's presence at trial, and in failing to designate Dr. Eckstein as a witness earlier, that was responsible for his lack of live testimony from an expert at trial. In any event, the harm to his case was attenuated somewhat when Dr. Swartz was permitted to testify through his deposition testimony, and a letter from Dr. Eckstein summarizing Mr. Canales' condition was entered into evidence. We conclude, in sum, that the district court did not abuse its discretion in denying Mr. Canales' motion for leave to amend the pretrial order to add Dr. Eckstein as an expert witness.

The judgment of the district court is AFFIRMED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge