FILED
United States Court of Appeals
Tenth Circuit

September 2, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

RONICA R. TABOR; DACIA S. GRAY,

      Plaintiffs-Appellants,

v.

HILTI, INC., a domestic for profit
business corporation; HILTI OF
AMERICA, INC., a foreign for profit
business corporation,

      Defendants-Appellees.

No. 13-5114
(D.C. No. 4:09-CV-00189-GKF-PJC)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **TYMKOVICH**, and **HOLMES**, Circuit Judges.

---

Ronica R. Tabor and Dacia S. Gray filed claims under Title VII of the Civil

Rights Act of 1964, alleging sex discrimination by Hilti, Inc. and Hilti of America,

Inc. (collectively, Hilti). Ms. Tabor appeals the district court's judgment in favor of

Hilti, following separate bench and jury trials on her claims asserting disparate

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

impact and disparate treatment.  Ms. Gray appeals the district court's grant of summary judgment to Hilti on her disparate impact claim.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.     Background

In their amended complaint, Ms. Tabor and Ms. Gray alleged that Hilti discriminated against them and a class of similarly situated plaintiffs on the basis of their sex in selecting employees for promotion from customer service jobs to outside sales Account Manager positions.  The district court refused to certify a class and then granted summary judgment in Hilti's favor on all claims.  *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1211 (10th Cir. 2013).  On appeal, we affirmed the district court's denial of class certification, as well as its grant of summary judgment on Ms. Tabor's retaliation claim and Ms. Gray's disparate treatment claim.  *Id.* at 1230.  We reversed the court's grant of summary judgment on Ms. Tabor's disparate treatment and disparate impact claims.  *Id.*  We also directed the court to rule in the first instance on Ms. Gray's disparate impact claim since its earlier order did not spell out the basis for summary judgment.  *Id.* at 1227, 1230.

On remand, the district court first entered summary judgment in Hilti's favor on Ms. Gray's disparate impact claim.  At Ms. Tabor's request, the court then

- 2 -

bifurcated her disparate impact and disparate treatment claims, agreeing to try them separately. A trial to the court on her disparate impact claim proceeded first.[1] In support of that claim, Ms. Tabor was required to show "that (a) an employment practice (b) causes a disparate impact on a protected group." *Id.* at 1220. We have noted that "[s]tatistical evidence is an acceptable, and common, means of proving disparate impact." *Id.* at 1222 (internal quotation marks omitted). Ms. Tabor presented expert statistical analysis supporting her contention that Hilti's Global Development and Coach Process (the GDCP) was an employment practice that caused a disparate impact on a protected group, specifically female employees seeking promotions from customer service jobs to outside sales Account Manager positions. It was also Ms. Tabor's burden to show that she was "personally [a] victim of discrimination by the challenged employment practice." *Id.* at 1221 n.7 (internal quotation marks and brackets omitted).

The district court issued findings of fact and conclusions of law, holding that Hilti was entitled to judgment on Ms. Tabor's disparate impact claim because she had not carried her burden to demonstrate that the GDCP caused a disparate impact on the protected group. The district court further held that Ms. Tabor failed to show she personally suffered discrimination as a result of the GDCP.

---

[1]   The district court had ruled that the disparate impact claim permitted only equitable relief and therefore should be decided by the court. *See* Aplt. App., Vol. I at 189-90.

After the bench trial concluded on Ms. Tabor's disparate impact claim, the court held a pretrial conference on Ms. Tabor's disparate treatment case. The court heard argument on whether the statistical evidence Ms. Tabor had presented in the disparate impact trial should be included in the pretrial order for the jury trial on her disparate treatment claim. The court ultimately decided to exclude that evidence from the pretrial order.

As the jury trial was beginning, Ms. Tabor filed a motion to amend the pretrial order to include the evidence regarding her statistical analysis. The district court denied her motion, and Ms. Tabor's disparate treatment case proceeded to trial without admission of her expert statistical evidence. The jury returned a verdict in favor of Hilti.

## II.     Discussion

Ms. Tabor contends that the district court erred in deciding her disparate impact claim by holding that her statistical analysis failed to show that the GDCP caused a disparate impact on the protected group. She also asserts that the district court erred in concluding that she failed to show she personally suffered discrimination as a result of the GDCP.

As to her disparate treatment claim, Ms. Tabor argues that the district court erred in excluding her statistical evidence from the pretrial order and in denying her motion to amend the pretrial order to include that evidence.

- 4 -

Ms. Gray contends that the district court erred in granting Hilti summary judgment on her disparate impact claim.

### A.     Ms. Tabor's Disparate Impact Claim

Ms. Tabor had the burden to show that the challenged employment practice—the GDCP—caused a disparate impact on female employees seeking promotions from customer service jobs to outside sales Account Manager positions. *See Tabor*, 703 F.3d at 1222. For her statistical evidence to be reliable, it had to "isolate and identify the specific employment practices that are allegedly responsible for any observed statistical disparities." *Id.* at 1223 (internal quotation marks and brackets omitted).

> The requirement to isolate the challenged employment practice is important because it goes directly to causation. . . . [A] plaintiff cannot establish her claim simply by showing that, at the bottom line, there is an imbalance in the work force. The imbalance must actually be a result of the challenged employment practice.

*Id.* at 1223-24 (citation and internal quotation marks omitted).

The district court found that Hilti's GDCP and its interview process are separate processes. It then held that, because Ms. Tabor's statistical analysis failed to isolate the GDCP from the interview process, the evidence did not show that the disparate impact was caused by the GDCP. The court ultimately ruled that Ms. Tabor had not carried her burden to demonstrate that the GDCP caused a disparate impact on the protected group.

The district court did not commit clear error in concluding that Hilti's GDCP and interview process are separate. We do not reach Ms. Tabor's second contention that the GDCP and the interview process were not capable of separation for analysis because she did not raise that issue in the district court.

To better understand Ms. Tabor's contentions, we begin our analysis with a summary of the district court's relevant findings of fact and conclusions of law.

## 1. District Court's Findings of Fact

### a. Facts Regarding the GDCP

Ms. Tabor alleged that "the GDCP was the employment practice responsible for the alleged disparate impact." Aplt. App., Vol. V at 1574. The district court found that the "GDCP tracks different aspects of an employee's readiness to promote, and is made up of two components: the Performance Management Process ('PMP') and the Strategic Management Development ('SMD') process." *Id.* at 1570-71. Under the PMP, a Hilti manager evaluates an employee's past performance and sets her goals going forward. The SMD process includes ratings assessing an employee's mobility (M-rating) and her promotability (P-rating). For example, an M1-D rating means the employee is "[r]eady to move anywhere domestically." *Id.* at 1572. An employee with a P1 rating is considered "[r]eady for next development step within 12 months." *Id.*

The court further found that "The Red Thread Dimensions are Hilti's 'core values' that run through everything in the organization and its employee

- 6 -

management." *Id.* at 1573 (internal quotation marks omitted). The Red Thread Dimensions consist of six criteria: "Understanding and Defining what need[s] to be done," "Getting things done," "Working with Others," "Developing Yourself & Others," "Functional Expertise," and "Understanding the Business." *Id.* These dimensions "are interwoven into both components of the GDCP[:] the PMP and SMD processes." *Id.* at 1574. They are also "interwoven into the interview process. Interviewers rate a candidate on a scale of 1-5 based on the interviewer's judgment of whether the candidate meets or exceeds the criteria for successful job performance within each of the dimensions." *Id.* (citation omitted).

Importantly, the district court also found that "[t]he SMD process identifies employees who are interested in promotional opportunities within Hilti," and that "[t]he output of the SMD process is a 'pool' or list of employees used as a management tool to track employees interested in promotions." *Id.* at 1571. The court further found that "[t]he potential candidates on the SMD list must interview and compete for future jobs. Thus, the promotional process for prospective Account Managers involves both the GDCP and a separate interview process. The SMD process and the interview process are different processes." *Id.* (citation omitted).

### b. Facts Regarding Ms. Tabor's Statistical Analysis

The district court noted that Ms. Tabor's expert analysis found "a statistically significant (at a 95% confidence level) disparate impact based on sex when reviewing Account Managers hired [during the relevant time periods] compared to the proxy

feeder group [of all Base Market employees]." *Id.* at 1579.  But as we discuss below, the district court did not credit this testimony.

### c.　　Facts Regarding Ms. Tabor

The district court found that Ms. Tabor worked for Hilti in customer service positions beginning in January 2006.  As of April 2007, she had expressed an interest in becoming a customer service Team Leader.  She was rated a P1 under the SMD process at that time.  During the third quarter of 2007, Ms. Tabor decided she wanted to pursue promotion to an Account Manager position.  She applied to be an Account Manager in the fall of 2007, and interviewed for jobs located in two different cities in November of that year.  Three candidates were interviewed—two women and one man.  The other candidates were both offered Account Manager positions; Ms. Tabor was not.  Ms. Tabor's PMP review dated January 31, 2008, indicated she was mobile with a geographic preference for five states.  Her review predicted that she would be an Account Manager by the first or second quarter of 2008.  Ms. Tabor resigned from Hilti effective April 5, 2008.

### 2.　　District Court's Conclusions of Law

The court determined that, "[b]ecause the GDCP is an employee development process that generates a talent pool of internal candidates who may be interviewed for promotions, it functions as an employment practice."  Aplt. App., Vol. V at 1583.  But the court held that the evidence was insufficient to demonstrate that the GDCP caused a disparate impact.

The court initially held that Ms. Tabor's expert statistical analysis was "methodologically sound and reliable." *Id.* Due to a lack of data indicating which Hilti employees had actually applied for Account Manager positions, the court concluded that Ms. Tabor's analysis had identified a proper proxy for the applicant pool for those jobs, specifically three categories of customer service positions that Hilti considered the "Base Market." *Id.* at 1584. The statistical analysis also "controlled for important variables other than sex that could impact promotion rates." *Id.* As a result of Hilti's incomplete data, the court held that Ms. Tabor's failure to control for SMD P- and M-ratings did not render the analysis unreliable.

The court held, however, that Ms. Tabor's statistical analysis "did not isolate the GDCP." *Id.* at 1585. It elaborated as follows:

> [The expert] report compares eventual Account Managers to the proxy of Base Market employees. The GDCP outputs a pool of potentially promotable employees. To move from Base Market to Account Manager requires an employee to go through an additional process – the interview process – which is separate from the GDCP. And external applicants are not directly subject to the GDCP at all.

*Id.* The court concluded that, "[b]ecause [the expert analysis] does not isolate the GDCP from the interview process, the disparate impact may be caused by one or both of those processes. And without knowing which of those processes cause[s] the alleged disparate impact, the court would be unable to fashion an appropriate equitable remedy." *Id.* Ultimately, the court held that "[b]ecause the statistical evidence does not isolate the GDCP, [Ms.] Tabor has not carried her burden of

demonstrating that the GDCP causes a disparate impact on female feeder pool applicants who apply for outside sales Account Manager positions." *Id.* at 1586.

The district court further determined that Ms. Tabor was not affected by the GDCP: "Tabor applied for an Account Manager position, participated in the GDCP, earned the highest [P-]rating possible, and interviewed for the Account Manager positions. Thus, through the GDCP, Tabor secured an interview for the Account Manager positions." *Id.* at 1587. The court concluded that the decision not to hire Ms. Tabor as an Account Manager "resulted from the interview process, not the GDCP. Therefore, even if [Ms.] Tabor had demonstrated the GDCP caused a disparate impact on female Account Manager applicants, that discrimination would not have applied to her personally." *Id.*

### 3. Standards of Review

"In an appeal from a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo." *Keys Youth Serv., Inc. v. City of Olathe*, 248 F.3d 1267, 1274 (10th Cir. 2001).[2] The district court's factual findings are clearly erroneous only if they are "without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made. If there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous."

---

[2] Ms. Tabor does not address in her opening brief the standard of review applicable to each of her claims, as required by Fed. R. App. P. 28(a)(8)(B).

*Curtis v. Okla. City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1217 (10th Cir. 1998) (citation and internal quotation marks omitted).

The applicable standard of review for a claim of error in a disparate impact case "depends upon the basis of the alleged error." *Villanueva v. Carere*, 85 F.3d 481, 486 (10th Cir. 1996). We review for clear error the district court's factual determination that Hilti's GDCP and interview processes are separate processes. *See id.* at 486-87 (applying clear error review to factual findings underlying the court's disparate impact determination). We review de novo the district court's holding that Ms. Tabor did not satisfy her burden to show a disparate impact because her statistical analysis failed to isolate the GDCP. *See id.* (holding appellate court reviews district court's "method of analysis" de novo).

### 4. The District Court's Finding that Hilti's GDCP and its Interview Process are Separate Processes was not Clearly Erroneous

Ms. Tabor asserts there is no evidence that the interview process and the GDCP are separate processes. She maintains that the interview is a component of the GDCP and that all GDCP components are interrelated through the Red Thread Dimensions. She fails, however, to show that the district court's finding on this issue was clearly erroneous.

Khesa Pinkard, a former Regional Manager with Hilti (and plaintiff's witness), testified that the GDCP consists of the PMP and the SMD, intertwined with the Red Thread Dimensions. Aplt. App., Vol. III at 683-84; 689-90. She stated, as well, that

- 11 -

a document titled Hilti's SMD & Red Thread Process Manual outlines the GDCP. *Id.* at 685. That process manual cautions employees that "[t]he SMD process never guarantees a promotion to an individual. The output is a 'pool' of potential candidates that will need to interview and compete for future jobs!" *Id.*, Vol. II at 425.

Ms. Tabor's statistical analysis was intended to demonstrate a disparate impact on women caused by the GDCP. Her expert witness testified regarding his understanding of the GDCP, stating that it included "coaching," "feedback," and "evaluations." *Id.*, Vol. III at 984. He also indicated that the SMD & Red Thread Process Manual described what he understood to be the GDCP. *Id.* at 985.

David Perkins, a director with Hilti, testified that the SMD process and the interview process are separate processes. *Id.*, Vol. IV at 1275. Christy Graybill, another Hilti director, testified that the SMD is not a selection process; rather, "[i]t helps coach and develop our team members in their career path." *Id.* at 1326. She stated that the outcome of the SMD process is to provide "a talent pool from which we've identified candidates who are ready to take on a next role and as soon as they're able to interview for a next position." *Id.* Addressing the SMD & Red Thread Process Manual, *see id.* at 1329, Ms. Graybill testified the process described in the manual is designed to help employees get into the interview pool for positions they are interested in, and that it does not impact who is actually selected for a competitive job, *id.* at 1331-32. She also made clear that, in addition to promoting

from within, Hilti also fills Account Manager positions through external hires. *Id.* at 1389.

The district court found that the GDCP is made up of two components:  the PMP and the SMD.  It concluded that the SMD process outputs a pool of employees interested in promotion to other positions within Hilti, who "must interview and compete for future jobs.  Thus, the promotional process for prospective Account Managers involves both the GDCP and a separate interview process.  The SMD process and the interview process are different processes." *Id.*, Vol. V at 1571 (citation omitted).  The court concluded further that "[t]he GDCP applie[s] only to internal applicants, and thus [does] not apply to all prospective Account Managers." *Id.* at 1574.  Based on the evidence presented at trial and the reasonable inferences therefrom, the district court's findings are not clearly erroneous.

### 5. Ms. Tabor Failed to Raise in the District Court her Contention that the GDCP and the Interview Process are not "Capable of Separation for Analysis"

Title VII provides that a plaintiff must "demonstrate that each particular challenged employment practice causes a disparate impact."  42 U.S.C. § 2000e-2(k)(1)(B)(i).  But the statute provides for an exception to that burden if the plaintiff can instead "demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis." *Id.*  In that case, "the decisionmaking process may be analyzed as one employment practice." *Id.*

- 13 -

Ms. Tabor contends that, even if the GDCP and the interview process are separate processes, the district court erred by presuming that the interview process is capable of analytic isolation from the GDCP components. In that way it thereby erred in concluding that she failed to carry her burden to prove a disparate impact caused by the GDCP. She argues that all of the components of the GDCP and the interview process are interrelated and tightly integrated through the use of overlapping criteria, namely the Red Thread Dimensions. As a result, she maintains, the GDCP and the interview process are not capable of separation for analysis. *See, e.g., Muñoz v. Orr*, 200 F.3d 291, 304 (5th Cir. 2000) ("[W]here a promotion system uses tightly integrated and overlapping criteria, it may be difficult as a practical matter for plaintiffs to isolate the particular step responsible for observed discrimination."). And she contends that the district court erred in *presuming* otherwise.

Under § 2000e-2(k)(1)(B)(i), it was Ms. Tabor's burden to demonstrate that the GDCP and the interview process are not capable of separation for analysis and should be analyzed as one employment practice. She argued in the district court that the elements of the GDCP are not capable of separation for analysis, and she does not assert on appeal that the district court failed to treat the GDCP as a single employment practice. But she did not raise that contention with respect to the GDCP and the *interview process*. "[O]ur general rule is not to address arguments that were not first presented to the district court." *Carpenter v. Boeing Co.*, 456 F.3d 1183,

- 14 -

1198 n.2 (10th Cir. 2006) (declining to address contention that evidence was "sufficient to trigger subsection 2000e-2(k)(1)(B)(i)," when plaintiffs failed to show they raised that issue in the district court); *see also Utah Animal Rights Coal. v. Salt Lake Cnty.*, 566 F.3d 1236, 1244 (10th Cir. 2009) ("[W]e generally do not consider new theories on appeal—even those that fall under the same general category as one that was presented in the district court.").

We reach this conclusion for several reasons. First, the final pretrial order for the bench trial on Ms. Tabor's disparate impact claim identified the GDCP as the challenged employment practice, Aplt. App., Vol. II at 392, and listed as an issue to be tried: "Whether the elements of defendants' decision-making process are capable of separation for analysis and, if so, whether the court should analyze the decision-making process as one employment practice," *id.* at 394. Hilti argued in closing that the evidence showed the GDCP and the interview process are separate processes and that the GDCP is not a selection process. The district court indicated at that time that it was struggling with the question of what aspect *of the GDCP* Ms. Tabor contended was the cause of the disparate impact.

Then, in her post-trial brief, Ms. Tabor described the GDCP as made up of the PMP, the SMD, and the Red Thread Dimensions. *See id.*, Vol. V at 1539. She did not mention the interview process. Ms. Tabor acknowledged the district court's request that she pinpoint what aspect of the GDCP caused the disparate impact. *See id.* at 1540. She argued that the court should characterize the GDCP as a single

- 15 -

employment practice because the GDCP is an overly subjective process lacking uniform criteria and providing supervisors with unbridled discretion. She continued by describing the overly subjective aspects of the SMD and the PMP, again not mentioning the interview process. *See id.* at 1540-42. Thus, Ms. Tabor did not indicate to the district court that she was "attempting to make the required showing of analytical inseparability," *Carpenter*, 456 F.3d at 1198 n.2, specifically with regard to the GDCP and the interview process, and the district court did not make any ruling on that issue. We therefore decline to address her argument for the first time on appeal.

We affirm the district court's judgment in favor of Hilti on Ms. Tabor's disparate impact claim.[3]

## B.    Ms. Tabor's Disparate Treatment Claim

Regarding her disparate treatment claim, Ms. Tabor argues that the district court erred in excluding her statistical analysis evidence from the pretrial order, and in denying her motion to amend the pretrial order to include that evidence. Both at the pretrial conference, and in response to Ms. Tabor's motion to amend the pretrial order, the district court emphasized its decision, at her request, to try separately her disparate impact and disparate treatment claims. It noted its bifurcation decision was

---

[3]    Because Ms. Tabor has not shown error in the district court's dispositive ruling that her statistical analysis failed to demonstrate that the GDCP had a disparate impact on the protected group, we need not address her alternative argument that the district court erred in concluding that she was not personally affected by the GDCP.

based, in part, on avoiding jury confusion regarding the statistical evidence. We find no abuse of discretion in the district court's rulings.

Federal Rule of Civil Procedure 16(c) "authorizes the district courts to hold pretrial conferences designed to aid in the disposition of cases, and enter orders subsequent thereto which control the subsequent course of the action, unless modified at trial to prevent manifest injustice." *Smith v. Ford Motor Co.*, 626 F.2d 784, 795 (10th Cir. 1980) (internal quotation marks and ellipsis omitted). The pretrial order "insure[s] the economical and efficient trial of every case on its merits without chance or surprise," and "measures the dimensions of the lawsuit, both in the trial court and on appeal." *Id.* (internal quotation marks omitted). Rule 16 lists the matters to be considered at the pretrial conference, including "formulating and simplifying the issues," "avoiding unnecessary proof and cumulative evidence," "determining the form and content of the pretrial order," and "ordering a separate trial under [Fed. R. Civ. P.] 42(b) of a claim." Fed. R. Civ. P. 16(c)(2)(A), (D), (J) & (M). Rule 42(b) provides that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate . . . claims."

### 1. District Court's Bifurcation Decision

"District courts have broad discretion in deciding whether to sever issues for trial . . . ." *F.D.I.C. v. Everett A. Holseth & Co.*, 36 F.3d 1004, 1008 (10th Cir. 1994) (internal quotation mark omitted). Here, the district court's initial inclination was to

proceed with one trial addressing both of Ms. Tabor's discrimination claims. *See* Aplt. App., Vol. I at 190 (directing parties to address how the disparate impact claim would be tried and suggesting "[o]ne alternative might be to try the [disparate treatment claim] to the jury, and to present any additional evidence to the court on the disparate impact claim during jury deliberations"). The court indicated that, under its suggested approach, Ms. Tabor could present her disparate impact evidence to the court in written form. *Id.* at 212.

Ms. Tabor responded that she would prefer to try the disparate impact claim first and thereby avoid "confusing the jury with it." *Id.* at 213. The court preliminarily agreed with this proposal, likewise expressing a concern about the jury being confused by the statistical data to be presented on the disparate impact claim. *See id.* at 213-14. Ms. Tabor then commented that "part of the reason the disparate impact claim is viewed as equitable . . . is that there's judicial expertise in dealing with difficult statistical information like that." *Id.* at 214. The district court ultimately decided to grant Ms. Tabor's request to try her disparate impact claim to the court first, followed by a separate jury trial on her disparate treatment claim.

> **2. The District Court did not Abuse its Discretion by Excluding the Statistical Evidence from the Pretrial Order in Ms. Tabor's Disparate Treatment Case**

At the pretrial conference for Ms. Tabor's disparate treatment claim, the court heard argument on whether her statistical evidence should be included in the pretrial order. The court initially observed:

It seems to the court that we bifurcated this matter at plaintiff's request and tried the disparate impact case first at plaintiff's request. Disparate impact evidence has no bearing in terms of statistics and the like in a disparate treatment case so . . . that evidence is simply not going to come in again in the disparate treatment [trial].

*Id.*, Vol. V at 1590-91. The court noted further that the disparate treatment trial would focus on comments related to Ms. Tabor's gender allegedly made by a Hilti Division Manager during her interview for the Account Manager positions, not on whether the GDCP caused a disparate impact on female employees. Ms. Tabor did not disagree, but argued nonetheless that the statistical analysis was evidence that a jury could consider in a disparate treatment trial.

The court then reviewed its rationale for bifurcating the claims and trying them separately, stating that "part of the rationale given for trying disparate impact first to the court was so as not to confuse the jury with statistics. . . . And frankly, I am very reluctant to go that direction." *Id.* at 1603. The court stated further:

[W]e've already spent four days in trial on this case, and one of the reasons for doing that was for judicial economy as well as to try to save money for the clients for both sides. And now you're saying the same evidence that came in before me can come in before the jury. Now, I really have a little problem with that because basically we're doing the same thing twice. Had you persuaded me of that beforehand, we would have tried it all [at] once and I would have decided the equitable side and the jury would have decided the legal side. And, in fact, that's how I went into our first series of final pretrial conferences, of wanting to do that, and you took the position that it was necessary to bifurcate and persuaded me of that.

*Id.* at 1604-05.

Ms. Tabor countered that the reason for bifurcating the claims was to prevent the jury from deciding the disparate impact claim. She maintained that jury confusion could be avoided and judicial economy could be served by admitting only the transcript of the expert's testimony in the disparate treatment trial. The district court was not persuaded and concluded as follows:

> I don't think that testimony which focuses on the alleged disparate impact of the GDCP process is proper before a jury *particularly after I was persuaded to bifurcate so as to avoid confusing the jury with it*.
>
> And in terms of regression analyses, frankly it's hard enough for us as lawyers and judges to wrap our heads around that as opposed to a jury. That's what the focus of the expert testimony was.
>
> . . . . So based upon what I've been presented here, we'll keep the statistical evidence separate, and that is firmly within the bosom of the court, believe me.

*Id.* at 1606-07 (emphasis added).

In making this ruling, the court carried through its previous reasoning in bifurcating the claims. "A trial court necessarily possesses considerable discretion in determining the conduct of a trial, including the orderly presentation of evidence. Even evidence which is relevant may be excluded in order to promote the administration of the judicial process . . . ." *Thweatt v. Ontko*, 814 F.2d 1466, 1470 (10th Cir. 1987) (citation omitted). As noted, Ms. Tabor requested the separate trials and expressed agreement with the court's primary basis for doing so. She has not shown that the district court abused its discretion in excluding her statistical evidence from the pretrial order for her disparate treatment jury trial.

### 3. The District Court did not Abuse its Discretion in Denying Ms. Tabor's Motion to Amend the Pretrial Order

On the first day of the jury trial, Ms. Tabor moved the district court to amend the pretrial order to include her statistical evidence. She argued the amendment was necessary to prevent manifest injustice because the evidence was relevant to her disparate treatment claim, and without it she would not be able to fully and fairly litigate her claim; that Hilti would not be prejudiced, or any prejudice could be cured; and that she was not proceeding in bad faith by seeking an amendment.

After further argument by the parties, the district court denied Ms. Tabor's motion to amend. While acknowledging "that evidence of pretext may include prior treatment of plaintiff, [and] the employer's policy and practice regarding minority employment, including statistical data," Aplt. App., Vol. V at 1754 (internal quotation marks omitted), the court nonetheless concluded:

> Given where we are – and I think I need to put this in context – the plaintiff[] had convinced me before we tried the disparate impact case to bifurcate and to try the disparate impact case first. One of the convincing arguments or the convincing considerations at that time – and the record will reflect – that by doing that we wouldn't have to present to a jury in the disparate treatment portion of the case the statistical evidence here.
> . . . .
>
> . . . [H]aving bifurcated the case in part to consider the statistical data in connection with the disparate impact claim . . . .
>
> . . . I believe it would, No. 1, be extremely prejudicial to the defense given that here just minutes before trial we have a motion to amend to admit the statistical evidence and it would severely prejudice the defendant insofar as the defendant would then have to marshal facts

- 21 -

to defend against that statistical evidence in the disparate treatment case.

. . . .

I think now it would be extremely prejudicial to do an about-face, particularly an about-face with regard to plaintiff's procedural position that we would present the statistical evidence to me in the disparate impact case, and had it been clear to me that the plaintiff wished to present statistical evidence in the disparate treatment case, we would have tried this once and I would simply have made the decision on the disparate impact claim separately and apart from the jury.

So with due respect, the last-minute motion to amend the pretrial order . . . will be denied.

*Id.* at 1753-55.

"We review the denial of a motion to amend a pretrial order for an abuse of discretion." *Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1208 (10th Cir. 2002). A pretrial order will only be amended "to prevent manifest injustice." *Id.* (internal quotation mark omitted).

We consider the following factors in a challenge to a district court's denial of a motion to amend the pretrial order and resulting exclusion of an issue: (1) prejudice or surprise to the party opposing trial of the issue; (2) the ability of that party to cure any prejudice; (3) disruption by inclusion of the new issue; and (4) bad faith by the party seeking to modify the order. We also take into consideration the timeliness of the movant's motion to amend the order.

*Id.* at 1210 (citation and internal quotation marks omitted).

The district court did not abuse its discretion in applying these factors. It reiterated that one of the considerations in bifurcating the disparate impact claim and trying it first was to avoid confusing the jury with the statistical evidence. The court referred to Ms. Tabor's "about-face" with regard to that procedural position, to which

- 22 -

she had previously acquiesced. Aplt. App., Vol. V at 1755. It stated it would have tried both claims together had she made clear her intent to present the statistical evidence in her disparate treatment case. The court concluded that Hilti would be prejudiced by having to marshal facts to defend against that evidence in the disparate treatment jury trial. And it referred to Ms. Tabor's "last-minute motion to amend the pretrial order." *Id.*

Ms. Tabor first asserts that her statistical evidence was relevant to her disparate treatment claim, but the district court did not hold otherwise. She contends that she did not intend, by bifurcating her claims, that she would later be precluded from introducing relevant evidence to the jury in her disparate treatment case. But this argument ignores her agreement during the pretrial conference preceding the bench trial that separate trials would avoid jury confusion regarding the statistical evidence. Finally, Ms. Tabor contends that Hilti would not have been prejudiced or surprised. But she ignores that Hilti had proceeded since the court's decision to bifurcate her claims on the assumption that it would not be defending against the statistical evidence in the jury trial on her disparate treatment claim. It was within the district court's discretion to consider the impact of Ms. Tabor's last-minute motion to amend the pretrial order on Hilti's prepared defense. Finding no abuse of discretion in the district court's determinations regarding the pretrial order for Ms. Tabor's disparate treatment trial, we affirm the judgment in favor of Hilti on that claim.

### C. Ms. Gray's Disparate Impact Claim

In discussing Ms. Gray's disparate impact claim in *Tabor*, we stated that "Hilti has offered undisputed evidence that multiple managers warned Ms. Gray about performance and disciplinary problems." 703 F.3d at 1227. We advised that, "[i]f the district court determines there is no genuine dispute that Ms. Gray was unqualified for the promotion based upon criteria not connected to the challenged employment practice, then summary judgment in Hilti's favor is appropriate." *Id.*

On remand, the district court entered summary judgment against Ms. Gray on her disparate impact claim, holding there was "no genuine dispute that [she] was unqualified for promotion based on criteria not connected to the GDCP system." Aplt. App., Vol. VIII at 2802. In reaching this conclusion, the court referenced its previous summary judgment ruling on Ms. Gray's disparate treatment claim, in which it held she was not qualified for the Account Manager position due to her lack of field training and personal concerns about her job performance expressed by her managers. The court held that these criteria were not connected to the GDCP.

We review a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to Ms. Gray and drawing all inferences in her favor. *Tabor*, 703 F.3d at 1215. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Ms. Gray contends the district court erred in concluding that Hilti's failure to promote her was unconnected to the GDCP. She maintains that her lack of field training and her managers' concerns about her job performance were connected to the challenged employment practice because manager discretion and the process of defining "qualified" employees were one and the same under the overly subjective GDCP.

As to her performance issues, Ms. Gray points to evidence that male employees with lower P-ratings than hers were nonetheless promoted. She asserts that "[e]vidence that Plaintiff Gray's supervisors had personal concerns regarding her qualification for promotion go directly to the subjective nature of the GDCP and are not unconnected to the challenged employment practice at all." Aplt. Opening Br. at 50. We agree. The district court failed to explain its conclusion that a manager's personal concerns regarding an employee's performance are unrelated to the subjective ratings assigned to the employee under the GDCP.

But the district court also relied on evidence of Ms. Gray's lack of field training. She does not dispute that field training was an objective requirement for promotion to Account Manager. She maintains, however, that this criterion is likewise connected to the overly subjective GDCP because managers had unfettered discretion to allow only male employees to complete field training, thereby keeping female employees "unqualified" to become Account Managers. The district court held that this criterion was unrelated to the GDCP because no one from Ms. Gray's

division—male or female—was permitted to do field training during the relevant time period. Ms. Gray argues there is a genuine dispute regarding that fact.

In reaching its conclusion that field training was unavailable to any employee, the district court referenced its summary judgment ruling on Ms. Gray's disparate treatment claim.[4] There the court stated that Ms. Gray

> attempted to get more field experience in 2008 because it was a prerequisite for promotion to outside sales. During the period [Ms.] Gray sought field experience, however, no customer service employees were permitted to go on field training because the department was short-handed and field training typically lasted one to two weeks.

ECF 123 at 3. Ms. Gray does not contest the district court's finding regarding the relevant time period during which she sought further field training. We conclude that the evidence she cites does not show that male employees were permitted to do field training at that time. *See* Aplt. App., Vol. VIII at 2524, 2548 (Ms. Gray's deposition testimony identifying four male employees who she witnessed being offered field training or engaging in field training, without any indication of the timeframe); *id.* at 2612 (document noting male job applicant completed a "[f]ield ride" in November 2007); *see also* ECF 120-2 at 2 (affidavit of same job applicant distinguishing his

---

[4]  Ms. Gray did not include this order in the Appellants' Appendix. We take judicial notice of the district court's docket, specifically its order granting summary judgment in favor of Hilti on Ms. Gray's disparate treatment claim. *See Tabor v. Hilti, Inc.*, No. 09-cv-189-GKF-FHM (N.D. Okla. Sept. 2, 2011) (order granting summary judgment), ECF No. 123 (hereafter cited by ECF and page number); *see also United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (court has discretion to take judicial notice of publicly filed records concerning matters bearing directly on disposition of case at hand).

one-day field ride in November 2007 from "field coverage" completed by inside sales employees for training purposes).[5] Ms. Gray has not shown error in the district court's conclusion that she was unqualified for a promotion to Account Manager based upon a criterion—lack of field training—not connected to the GDCP.

The judgment of the district court is affirmed.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

---

[5] We take judicial notice of Hilti's reply and exhibits in support of its summary judgment motion, which Ms. Gray also did not include in the Appellants' Appendix. *See Tabor v. Hilti, Inc.*, No. 09-cv-189-GKF-FHM (N.D. Okla. Mar. 11, 2011) (reply in support of summary judgment motion), ECF No. 120.